**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **DAVID FERGUSON, MARILYN FERGUSON, JAZLYN FERGUSON,** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 6:25-CV-00472-JDK** |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **EVANS DELIVERY COMPANY, INC., DIONNE WILLIAMS,** | § | |
| | § | |
| | § | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants Evans Delivery Company, Inc.'s and Dionne Williams's ("Defendants") motion to limit or exclude certain opinions and testimony of Plaintiffs' life care planning expert, Dr. Matthew W. Hyzy, pursuant to Federal Rule of Evidence 702. (Doc. No. 42.) Plaintiffs David Ferguson, Marilyn Ferguson, and Jazlyn Ferguson ("Plaintiffs") have filed a response (Doc. No. 47).

## BACKGROUND

This case involves bodily injuries resulting from a vehicular accident on July 17, 2025 between Marilyn Ferguson and Defendant Williams. (Doc. No. 3.) Plaintiffs allege that Defendant Williams was driving a vehicle owned and maintained by Defendant Evans Delivery. *Id.* Specifically, Plaintiffs contend that while driving the vehicle, Defendant Williams failed to keep a lookout and failed to control his speed, causing the accident. *Id.* Plaintiffs assert claims for negligence and gross negligence against all Defendants. *Id.* Pursuant to Federal Rule of Civil Procedure 26(a)(2), Plaintiff designated Matthew Hyzy, D.O. of Physician Life Care Planning as

a retained expert to testify as to the medical and physical conditions of Plaintiffs and the medical costs for Plaintiffs' future medical needs. (Doc. No. 42-4).

Defendants move to exclude Dr. Hyzy from offering opinions outside his areas of expertise, for lacking the necessary qualifications to provide life care planning opinions, and for relying on an unreliable methodology that fails to account for Plaintiffs' extensive pre-existing medical conditions. (Doc. No. 42.) Defendants further contend that certain opinions identified in Plaintiffs' expert designation were not disclosed in Dr. Hyzy's reports and therefore must be excluded under Federal Rules of Civil Procedure 26 and 37. *Id.* at 1–2.

## LEGAL STANDARDS

### I. Expert Challenges under *Daubert*

In accordance with Federal Rule of Evidence 104(a), when faced with expert testimony, the trial court acts as a "gatekeeper" and must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–95 (1993). To admit expert testimony, a court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* Trial judges have traditionally been afforded wide discretion to admit or exclude expert evidence. *Eymard v. Pan American World Airways*, 795 F.2d 1230, 1233 (5th Cir. 1986).

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and reports. "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." *Peters v. Five Star Marine*, 898 F.2d 448, 449 (5th Cir. 1990) (citing Fed.R.Evid. 702 advisory committee's notes (2000)). Assisting the trier of fact

means "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *Eymard*, 795 F.2d at 1233). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

When evaluating expert testimony, the overarching concern is generally focused on whether it is relevant and reliable. *See Daubert*, 509 U.S. at 590. To be reliable and therefore admissible under Rule 702, expert testimony as to a scientific, technical, or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles and methods; (4) and have reliably applied the principles and methods to the facts. Fed.R.Evid. 702. "[T]he test of reliability is 'flexible,' and the *Daubert* factors neither necessarily nor exclusively apply to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 151.

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. *See* Fed.R.Evid. 702 Advisory Committee's Notes, 2000 Amendments (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). While the district court must act as a gatekeeper to exclude all unreliable expert testimony, "the rejection of expert testimony is the exception rather than the rule." Fed.R.Evid. 702 advisory committee's notes (2000) (citing *Daubert*, 509 U.S. 579; *Kumho Tire Co.*, 526 U.S. 137). Importantly, in a jury trial setting, the court's role under *Daubert* is not to weigh the expert testimony to the point of

supplanting the jury's fact-finding role; rather, the court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## DISCUSSION

As discussed, Defendants generally move to exclude Dr. Hyzy from offering expert opinion testimony as to areas outside his expertise and as to things he is not qualified to opine on. (Doc. No. 42.) Specifically, Defendants argue: (1) that Dr. Hyzy is not qualified to offer neurological, psychiatric, or orthopedic spinal opinions; (2) that he is not qualified to offer life care planning opinions; (3) that his methodology is unreliable because he failed to consider Plaintiffs' pre-existing medical conditions; and (4) that he failed to provide testimony on subject matter disclosed. *Id.* Plaintiffs argue that Dr. Hyzy is qualified to provide the challenged opinions based on his board certification in physical medicine and rehabilitation ("PM&R"), fellowship training in interventional spine, sports, pain, and regenerative orthopedics, and certification in life care planning. (Doc. No. 47.) Plaintiffs further contend that Dr. Hyzy employed a reliable, individualized methodology, considered Plaintiffs' medical histories and pre-existing conditions, and adequately disclosed the opinions and supporting bases in his reports. *Id.* Accordingly,

Plaintiffs maintain that Defendants' objections concern the weight of Dr. Hyzy's testimony rather than its admissibility under Federal Rule of Evidence 702. *Id.* at 3–4.

**I. Dr. Hyzy's Neurological, Psychiatric, and Orthopedic Spinal Opinions**

Defendants first argue that Dr. Hyzy, a PM&R specialist, lacks the qualifications to offer opinions concerning orthopedic spinal procedures, neurological diagnoses, and psychiatric conditions. (Doc. No. 42, at 4.) Specifically, Defendants contend that Dr. Hyzy improperly assumes that Plaintiffs will require future orthopedic procedures, including steroid injections, platelet-rich plasma injections, facet injections, and potentially other spinal interventions, without possessing the specialized training or experience necessary to determine whether those procedures are medically necessary. *Id.* Similarly, Defendants argue that Dr. Hyzy is not board-certified in neurology, has no neurology fellowship training, lacks the qualifications to independently diagnose neurological conditions, and is unqualified to offer psychiatric opinions, including opinions that Plaintiffs suffer from psychiatric conditions requiring annual visits and prescription medication. *Id.* at 4–5. Plaintiffs contend that Defendants improperly define Dr. Hyzy's qualifications too narrowly by focusing on the absence of separate board certifications in orthopedic surgery, neurology, and psychiatry. (Doc. No. 47, at 9–10). Plaintiffs argue that Rule 702 does not require an expert to possess the highest possible qualifications or an exact match between his specialty and every subject addressed; rather, an expert may qualify through relevant knowledge, skill, experience, training, or education, and limitations in specialization generally affect the weight of the testimony rather than its admissibility. *Id.*

Dr. Hyzy is a board-certified PM&R physician. (Doc. No. 47-1, at 7–8.) He completed a residency in Physical Medicine and Rehabilitation and a fellowship in interventional spine, sports, pain, and regenerative orthopedics. *Id.* His clinical work involves life care planning, performing

interventional spine pain-management injections, rehabilitation and interventional procedures for brain injuries, and psychological evaluation or treatment as part of a patient's rehabilitation needs. (Doc. No. 47-4, at 4–5.) These credentials and experience appear to give Dr. Hyzy a qualified basis to opinion on matters relating to neurology, psychiatry, and orthopedics. At the very least, they do not warrant wholesale exclusion of his testimony for lacking qualification. The Fifth Circuit has held that specialists are qualified to testify about field of medicine ancillary to their field. *See, e.g., Dawsey v. Olin Corp*., 782 F.2d 1254, 1262–63 (5th Cir.1986) (scientists with PhDs were qualified to testify about fields of medicine ancillary to their field of research); *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 200 (5th Cir. 2016). Further, the Fifth Circuit has adopted a liberal standard requiring only that a proponent of expert evidence adduce "some reasonable indication of qualifications". *Rushing v. Kansas City Southern Ry. Co*., 185 F.3d 496, 507 (5th Cir. 1999). As such, the court finds Dr. Hyzy qualified to testify.

**II. Dr. Hyzy's Life Care Planning Opinions**

Defendants next argue that Dr. Hyzy lacks the training and credentials necessary to qualify as a life care planning expert because his curriculum vitae does not reflect certification as either a certified life care planner or a certified physician life care planner, nor does it identify formal education or coursework in life care planning. (Doc. No. 42, at 7–8.) Plaintiffs argue that Dr. Hyzy possesses the requisite qualifications to evaluate Plaintiffs' injuries and future medical needs as he is an actively practicing, board-certified PM&R physician, a Certified Life Care Planner through the International Commission on Health Care Certification, and a physician with fellowship training in interventional spine, sports, pain, and regenerative orthopedics. (Doc. No. 47, at 9–10.) Plaintiffs specifically argue that physiatry provides an appropriate medical foundation for life care planning because the specialty encompasses the diagnosis and treatment of conditions affecting

the brain, spinal cord, nerves, bones, joints, muscles, and connective tissues. *Id.* at 10–11. They contend that physiatrists are trained to evaluate patients with musculoskeletal and neurological conditions, assess functional impairments, and anticipate long-term medical and rehabilitative needs. *Id.* Plaintiffs rely on professional literature, including the *Life Care Planning and Case Management Handbook* and publications from the American Academy of Physical Medicine and Rehabilitation, to support their position that physiatrists are particularly suited to develop medically grounded life care plans. *Id.*

Dr. Hyzy's credentials outlined herein appear to qualify him to opine on life care planning. He is board-certified as a PM&R physician and a Certified Life Care Planner through the International Commission on Health Care Certification who has additional clinical experience. Courts have found PM&R certified physicians qualified to testify to life care planning without any of the additional credentials or certifications that Defendants imply are needed. S*ee Sierra v. JST Transportes S.A*. De C.V., No. 5:24-CV-30, 2025 WL 3760316, at *2 (S.D. Tex. Sept. 26, 2025) (finding Doctor of Osteopathic Medicine with specialties in physical medicine, rehabilitation, and life care planning qualified to testify generally as to life care planning); *Koenig v. Beekmans*, No. 5:15-CV-0822-OLG, 2017 WL 7732809, at *2 (W.D. Tex. Mar. 23, 2017) (finding board certified neurologist with experience in rehabilitation and who was a certified Life Care Planner qualified to testify as to a life care plan). Again, there is no basis here for wholesale exclusion based on the credentials of Dr. Hyzy listed herein. The court finds that he is qualified.

## III. Dr. Hyzy's Methodology

Defendants next argue that Dr. Hyzy's methodology independently fails the reliability requirements of Federal Rule of Evidence 702 because his opinions are not based on sufficient facts or data and do not reliably apply his methodology to the facts of the case. (Doc. No. 42, at

8.) Specifically, Defendants contend that Dr. Hyzy reviewed only post-accident medical records and relied on histories provided by Plaintiffs rather than obtaining and reviewing their complete pre-accident medical histories. *Id.* Plaintiffs contend that Dr. Hyzy employed a reliable and identifiable methodology that satisfies Federal Rule of Evidence 702 as each life care plan documents the process by which Dr. Hyzy reviewed medical evidence, evaluated Plaintiffs, identified diagnostic conditions and functional limitations, formulated future-care recommendations, and calculated the anticipated costs of that care. (Doc. No. 47, at 13.) Plaintiffs maintain that the reports provide sufficient detail for Defendants and the court to examine the inputs, assumptions, and conclusions underlying each recommendation. *Id.*

To be reliable, and therefore admissible under Rule 702 of the Federal Rules of Evidence, expert testimony as to a scientific, technical or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles or methods; (4) and have reliably applied the principles and methods to the facts. Fed.R.Evid. 702. "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion." *Barbe v. Gov't Employees Ins. Co.*, No. 4:13–CV–441, 2014 WL 12601152, at *2 (E.D. Tex. June 30, 2014) (citing *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007)). Defendants' argument regarding the exclusion of pre-accident medical records goes to the weight not the admissibility of Dr. Hyzy's opinions. *See Koenig*, 2017 WL 7732809, at *3 ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact."). Defendants' arguments as to the bases of Dr. Hyzy's opinion should instead be addressed by "[v]igorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 596). Therefore, the court finds Dr. Hyzy's opinions admissible.

**IV. Undisclosed Opinions**

Defendants additionally argue that Plaintiffs' expert designation identifies opinions that Dr. Hyzy's actual reports do not contain. (Doc. No. 42, at 9). Specifically Defendants argue that Plaintiffs' expert designation represents that Dr. Hyzy will testify regarding the reasonableness and necessity of past medical treatment, past medical expenses, and the usual and customary charges for medical services, but that Dr. Hyzy's reports consist exclusively of forward-looking life care plans and contain no opinions addressing whether past treatment was necessary, whether past medical charges were reasonable, or whether the amounts billed were consistent with usual and customary charges in the relevant market. *Id.* at 9–10. Defendants further argue that Plaintiffs' representations state that Dr. Hyzy will offer causation testimony concerning the injuries sustained in the accident, but his reports merely state that the future medical requirements identified in the life care plans are specifically attributable to medical conditions resulting from the accident, without providing biomechanical reasoning, differential analysis, or any articulated explanation supporting that conclusion. *Id.*

Plaintiffs dispute Defendants' argument that Dr. Hyzy intends to offer opinions that were not disclosed in his expert reports. (Doc. No. 47, at 21.) They contend that Defendants improperly isolate the ultimate causation conclusions from the reports' supporting medical histories, diagnostic findings, examinations, and assessments, and that the reports identify the conditions attributed to the collision, the pre-existing conditions allegedly aggravated by the collision, and the future medical care considered necessary, together with the evidence supporting those conclusions. *Id.*

These arguments make it difficult to follow what was allegedly not disclosed under Federal Rule of Civil Procedure 26(a)(2)(B)(i) that needs to be excluded under Rule 37(c)(1). As to the first argument, Defendants argument is not that Dr. Hyzy failed to disclose something that he is now trying to include, but rather that he disclosed something that is not being offered in his report and testimony. As to the second argument, this appears not to be a disclosure issue but a challenge as to causation. As an initial matter, "the parties' testifying experts will be limited to testifying on the opinions that have been properly disclosed in this matter." *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-CV-00551 RC-JDL, 2016 WL 9245441, at *4 (E.D. Tex. Dec. 15, 2016), *report and recommendation adopted*, No. 6:15-CV-00551-RC, 2017 WL 3404795 (E.D. Tex. Aug. 8, 2017) (citing Fed.R.Civ.P 26(a)(2)). The court need not make a preemptive ruling on matters outside of the scope of the expert report as such testimony has not yet been given or plainly identified. Those objections may be made during the pretrial or trial proceedings. Similarly, as to the issue of causation, Dr. Hyzy may again rely on what is disclosed in his report. Challenges to those opinions and corresponding testimony may be made at trial but do not presently serve as a basis for exclusion.

**V. Request for Alternative Limitation**

Finally, Defendants alternatively request that if the court declines to exclude the opinions of Dr. Hyzy, that the court: (1) limit his testimony to the formulation and costing of the life care plan, without permitting him to independently opine on surgical necessity, neurological diagnoses, or psychiatric diagnoses; (2) require Dr. Hyzy to identify and attribute each medical recommendation in his plan to the specific qualified treating physician who made that recommendation; and (3) instruct the jury that Dr. Hyzy is not an orthopedic surgeon, neurologist, or psychiatrist and that her opinions on those subjects should be evaluated in light of those

limitations. (Doc. No. 42, at 10.) These conclusory requests are the extent of Defendants' alternative request argument. While these arguments may have presented some plausible basis to limit the testimony of Dr. Hyzy, Defendants' arguments are no more than conclusory requests that the court cannot rule on as presented. To the extent that Defendants seek to limit this testimony, they will need to raise any such argument during pretrial or trial proceedings.

## CONCLUSION

For the reasons explained herein, Defendants' motion to strike the expert testimony of Dr. Hyzy (Doc. No. 42) is **DENIED.**

**So ORDERED and SIGNED this 17th day of November, 2026.**



JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE