**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **DAVID FERGUSON, MARILYN FERGUSON, JAZLYN FERGUSON,** | § § | |
| | § | **CIVIL ACTION NO. 6:25-CV-00472-JDK** |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| **EVANS DELIVERY COMPANY, INC., DIONNE WILLIAMS,** | § § § § | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants Evans Delivery Company, Inc.'s and Dionne Williams's ("Defendants") motion to limit or exclude certain opinions and testimony of Plaintiffs' economic experts, Harold Asher and Jeffrey Meyers, pursuant to Federal Rule of Evidence 702. (Doc. No. 43.) Plaintiffs David Ferguson, Marilyn Ferguson, and Jazlyn Ferguson ("Plaintiffs") have filed a response (Doc. No. 45).

## BACKGROUND

This case involves bodily injuries resulting from a vehicular accident on July 17, 2025 between Marilyn Ferguson and Defendant Williams. (Doc. No. 3.) Plaintiffs allege that Defendant Williams was driving a vehicle owned and maintained by Defendant Evans Delivery. *Id.* Specifically, Plaintiffs contend that while driving the vehicle, Defendant Williams failed to keep a lookout and failed to control his speed, causing the accident. *Id.* Plaintiffs assert claims for negligence and gross negligence against all Defendants. *Id.* Pursuant to Federal Rule of Civil Procedure 26(a)(2), Plaintiff designated Harold Asher and Jeffrey Meyers as retained experts to

testify as to Plaintiff Jazlyn Ferguson's alleged loss of earning capacity. (Doc. No 43-2). Defendants move to exclude the experts' opinions that they claim are speculative, lack an adequate evidentiary foundation, and are based on unreliable assumptions and incomplete information. (Doc. No. 43, at 1–2).

## LEGAL STANDARDS

### I. Expert Challenges under *Daubert*

In accordance with Federal Rule of Evidence 104(a), when faced with expert testimony, the trial court acts as a "gatekeeper" and must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–95 (1993). To admit expert testimony, a court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* Trial judges have traditionally been afforded wide discretion to admit or exclude expert evidence. *Eymard v. Pan American World Airways*, 795 F.2d 1230, 1233 (5th Cir. 1986).

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and reports. "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." *Peters v. Five Star Marine*, 898 F.2d 448, 449 (5th Cir. 1990) (citing Fed.R.Evid. 702 advisory committee's notes (2000)). Assisting the trier of fact means "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *Eymard*, 795 F.2d at 1233). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the

same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

When evaluating expert testimony, the overarching concern is generally focused on whether it is relevant and reliable. *See Daubert*, 509 U.S. at 590. To be reliable and therefore admissible under Rule 702, expert testimony as to a scientific, technical, or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles and methods; (4) and have reliably applied the principles and methods to the facts. Fed.R.Evid. 702. "[T]he test of reliability is 'flexible,' and the *Daubert* factors neither necessarily nor exclusively apply to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 151.

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. *See* Fed.R.Evid. 702 Advisory Committee's Notes, 2000 Amendments (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). While the district court must act as a gatekeeper to exclude all unreliable expert testimony, "the rejection of expert testimony is the exception rather than the rule." Fed.R.Evid. 702 advisory committee's notes (2000) (citing *Daubert*, 509 U.S. 579; *Kumho Tire Co.*, 526 U.S. 137). Importantly, in a jury trial setting, the court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; rather, the court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties'

experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## DISCUSSION

Defendants move to exclude Harold Asher's and Jeffrey Meyers's opinions on the grounds that: (1) they lack an evidentiary foundation for any opinion concerning loss of earning capacity because an economist may quantify an established loss but cannot independently establish the underlying impairment; (2) the experts' use of hypothetical earning scenarios is unreliable because they provide two substantially different projections without identifying which, if either, is reasonably probable; and (3) the experts' methodology is unreliable because it is not based on sufficient facts or data and intentionally excludes relevant information. (Doc. No. 43.) Plaintiffs argue that the economists are qualified to perform reliable economic calculations, that their opinions are based on identifiable wage data and supported assumptions, and that Defendants' objections concern the weight of the evidence rather than its admissibility. (Doc. No. 45, at 3, 9–10.)

### I. Foundation for Loss of Earning Capacity

Defendants contend that Plaintiffs' economic experts expressly disclaim offering an opinion on whether Ms. Ferguson actually sustained a loss of earning capacity and acknowledge that such an opinion would depend on testimony from physicians, vocational evaluators, or others. (Doc. No. 43, at 4.) Defendants point out that Plaintiffs have not designated a vocational expert, and no treating or retained physician has opined that Ms. Ferguson is unable to work, perform any

category of work, or pursue any course of education. *Id.* Defendants further contend that the available evidence affirmatively contradicts any claim that Ms. Ferguson's earning capacity has been impaired, pointing to evidence that she returned to work, was never excused from work by a physician, recently obtained a second job, and can occasionally lift up to 25 pounds. *Id.* Without evidence of an actual impairment to her earning capacity, Defendants argue, projecting her lifetime gross earning capacity is irrelevant, does not assist the jury, and risks misleading the jury into treating a seven-figure earning capacity projection as an established measure of damages. *Id.*

Plaintiffs maintain that the economists employ standard and reliable economic methodologies and rely on decisions from courts within the Fifth Circuit admitting similar economic testimony, including testimony from Mr. Asher and Mr. Meyers. (Doc. No. 45, at 10–12.) Plaintiffs cite cases permitting economists to use government wage statistics and alternative educational or occupational assumptions when calculating earning capacity, arguing that these decisions support the use of occupational wage benchmarks rather than limiting earning capacity calculations to a plaintiff's historical earnings. *Id.* Moreover, Plaintiffs argue that returning to work or earning more after an injury does not necessarily eliminate a future earning capacity claim, citing cases recognizing that physical limitations may restrict future opportunities even when current wages have not declined. *Id.* at 13. Plaintiffs further point to Ms. Ferguson's reported difficulty performing work duties, persistent knee pain aggravated by standing, reduced right-leg strength, painful and reduced lumbar extension, and reduced mobility, relying on Dr. Hyzy's opinions concerning her limitations and continuing care. *Id.* at 12–13.

Here, Mr. Asher and Mr. Meyers specifically disavow providing any opinion on the loss of earning capacity. (Doc. No. 43-1, at 1.) Rather, they express that they are responding to hypotheticals proposed by counsel. *Id.* The Fifth Circuit has explained that the Federal Rules

envision that "opinions can be given in response to hypothetical questions or facts presented to the expert at trial." *See Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1089 (5th Cir. 1988) (citing Fed.R.Evid. 703). The court therefore finds the use of hypotheticals generally permissible. To the extent that the actual evidence contradicts testimony regarding a hypothetical, Defendants may cross-examine the experts with that supporting evidence. Moreover, to the extent that this argument is more largely aimed at the matter of qualification, Plaintiff is correct that at least one court in the Fifth Circuit has recently found Mr. Asher and Mr. Meyers qualified to opine on future economic losses. *See Espinoza v. Westbank Fishing, LLC*, No. CV 23-6204, 2025 WL 1884846, at *4 (E.D. La. July 8, 2025). Mr. Asher has an MBA in accounting and finance, has been a CPA since 1976, and has credentials and experience in business valuation, financial forensics, and personal-injury damages. (Doc. No. 45, at 6, 9.) Mr. Meyers has a master's degree in mathematics and statistics, valuation and financial-forensics credentials, and experience calculating personal injury damages and future medical costs. *Id.* The court finds the experts qualified to testify to economic losses and further finds no basis to generally exclude their testimony regarding earning capacity.

**II. Hypothetical Earning Scenarios**

Defendants next challenge the experts' hypothetical scenarios. Under Scenario One, the experts assign Ms. Ferguson a pre-accident annual wage of $38,050, based on the Bureau of Labor Statistics' statewide mean wage for hairdressers, hairstylists, and cosmetologists. (Doc. No. 43-1.) Defendants argue that the record contains no evidence that Ms. Ferguson ever formally worked as a cosmetologist, held a cosmetology license, received an offer for such employment, or earned wages approaching that amount; rather, her verified interrogatory responses reflect that she worked part-time and earned between $9.00 and $12.30 per hour. (Doc. No. 43, at 5.) Defendants contend that the experts improperly substituted a statewide occupational average for Ms. Ferguson's

documented earnings history, despite identifying her earnings at the time of injury as a relevant consideration in their expert designation. *Id.*

Under Scenario Two, the experts assume Ms. Ferguson will complete nursing school and begin earning the Texas registered-nurse mean annual wage of $84,320 on January 1, 2031, with an additional 15% in fringe benefits. (Doc. No. 43-1.) Defendants argue that this assumption has no evidentiary support because the record contains no evidence of Ms. Ferguson's enrollment in nursing school, an application to a nursing program, prerequisite coursework, academic transcripts, testimony concerning a nursing career, or vocational assessment. (Doc. No. 43, at 5–6.) Defendants further contend that the experts fail to explain how the accident would prevent Ferguson from becoming a nurse, particularly in the absence of any physician-imposed work restrictions. *Id.*

Plaintiffs defend the occupational assumptions underlying both earning capacity scenarios. Regarding Scenario One, Plaintiffs argue that the $38,050 annual cosmetology wage is supported by Ms. Ferguson's completed cosmetology training and certification. (Doc. No. 45, at 13–14.) They emphasize that the accident occurred while the family was returning from her cosmetology school graduation and that Dr. Hyzy's records document her cosmetology certification. *Id.* Plaintiffs maintain that the cosmetology wage benchmark is particularly appropriate because it corresponds to an occupation for which Ms. Ferguson had completed training before the collision and argue that any disagreement over whether she would have obtained cosmetology employment or earned the projected wage is properly addressed through cross-examination rather than exclusion. *Id.* at 14. Plaintiffs also defend Scenario Two, which assumes Ms. Ferguson will complete nursing school and begin working as a registered nurse on January 1, 2031, earning the Texas mean annual wage of $84,320, plus 15% fringe benefits. *Id.* at 6–7, 14. Plaintiffs acknowledge that this scenario is based on an assumed future educational and career path but

contend that the assumption reflects Ms. Ferguson's communicated plans before the accident. *Id.* Plaintiffs argue that the economists expressly identify the assumptions underlying the scenario, allowing the jury to determine whether the evidence supports them. *Id.*

As an initial matter, as discussed above, opinion testimony given in response to hypotheticals is generally admissible. *See Snyder*, 839 F.2d at 1089 (citing Fed.R.Evid. 703). As to Scenario One, there is no dispute that Ms. Ferguson had completed her cosmetology certificate and that in fact the accident occurred while returning from her cosmetology school graduation. (Doc. No. 45-2.) Though Ms. Ferguson therefore plainly did not have any past wages with respect to this career as she had only just graduated prior to the accident, a hypothetical consideration of her future wages is not per se unreliable. Testimony regarding future earnings, even where speculative and conjectural, is admissible as it goes to the weight of the evidence. *See Croce v. Bromley Corp*., 623 F.2d 1084, 1094 (5th Cir. 1980). The court finds Scenario One admissible.

As to Scenario Two, however, there appears to be no support in the record other than an alleged communication that Ms. Ferguson intended to go to nursing school prior to the accident. There is no indication that she had applied to nursing school or that she had taken any steps towards nursing school, such as any prerequisite coursework being fulfilled. The court does not find that a plaintiff must have enrolled in or completed a particular educational program before claiming loss of earning capacity in that profession as future earning capacity necessarily involves some uncertainty. However, Plaintiff must establish a sufficient factual basis to support the likelihood of the proposed career path. *See Riha v. Offshore Serv. Vessels, LLC*, 547 F. Supp. 3d 550, 559 (E.D. La. 2021) (granting motion to limit where the evidence suggested that plaintiff was a good worker, but there was no evidence that plaintiff had applied to be a master or pilot or that his employer had encouraged him to do so). Here, evidence of a stated intention to attend nursing school, without

evidence of enrollment, application, prerequisites, admission, coursework, or other concrete steps toward that career, is insufficient to support the specific nursing-career projection. Because Scenario Two depends on that unsupported premise, it is speculative and would not materially assist the jury in determining Ms. Ferguson's actual loss of earning capacity. The court therefore finds that Mr. Asher's and Mr. Meyer's opinions should be limited to exclude Scenario Two.

**III. Methodology**

Lastly, Defendants argue that the experts' methodology is unreliable because it is not based on sufficient facts or data and intentionally excludes relevant information. Defendants assert that Mr. Asher and Mr. Meyers relied only on eight weeks of post-accident pay stubs, a pleading, and Dr. Hyzy's report, while failing to consider Ms. Ferguson's tax returns, written discovery responses, employment files, or medical records. (Doc. No. 43, at 6.) Defendants maintain that these omissions are particularly significant because the excluded information bears directly on the assumptions underlying the experts' calculations. *Id.* They argue that ignoring readily available evidence that contradicts those assumptions creates a fundamental analytical gap and demonstrates that the experts did not reliably apply their methods to the facts of the case, as required by Rule 702(d). *Id.* Plaintiffs argue that the experts' review of a limited number of documents does not warrant exclusion under Rule 702. (Doc. No. 45, at 16.) They acknowledge that the report identifies Ross earnings statements, Dr. Hyzy's life-care plan, the amended petition, and an economic checklist as materials reviewed, but contend that Rule 702 requires a sufficient factual basis for each particular opinion, not review of a predetermined checklist of documents. *Id.* They emphasize that Dr. Hyzy reviewed Ms. Ferguson's medical records, interviewed and examined her, and identified her diagnoses, functional limitations, and future medical needs. *Id.* Ultimately,

Plaintiffs maintain that disputes over the significance of particular records concern the weight of the opinions rather than their admissibility. *Id.*

To be reliable, and therefore admissible under Rule 702 of the Federal Rules of Evidence, expert testimony as to a scientific, technical or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles or methods; (4) and have reliably applied the principles and methods to the facts. Fed.R.Evid. 702. "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion." *Barbe v. Gov't Employees Ins. Co*., No. 4:13–CV–441, 2014 WL 12601152, at *2 (E.D. Tex. June 30, 2014) (citing *Knight v. Kirby Inland Marine Inc*., 482 F.3d 347, 355 (5th Cir. 2007)). Defendants' argument regarding the omission of records included goes to the weight not the admissibility of the experts' opinions. *Koenig v. Beekmans,* No. 5:15-CV-0822-OLG, 2017 WL 7732809, at *3 (W.D. Tex. Mar. 23, 2017) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact."). As Defendants concede, and the record demonstrates, Mr. Asher and Mr. Meyers rely on Ross earnings statements, Dr. Hyzy's life-care plan, the amended petition, and an economic checklist as materials reviewed. (Doc. No. 43-1.) Consideration of these materials, or lack of consideration of other materials, should be addressed by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 596). The court finds no basis to exclude the testimony on these grounds.

## CONCLUSION

For the reasons explained herein, Defendants' motion to strike the expert testimony of Mr. Asher and Mr. Meyers (Doc. No. 43) is **DENIED-IN-PART** and **GRANTED-IN-PART**. The court excludes the experts' testimony regarding Scenario Two. The motion is denied on all other grounds.

**So ORDERED and SIGNED this 17th day of November, 2026.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE